UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23167-BLOOM/Louis

SHERRY JOHNSON,

    Plaintiff,

v.

CARNIVAL CORPORATION,
*a Panamanian Corporation doing business as* Carnival Cruise Lines,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION TO STRIKE/*DAUBERT* MOTION

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Strike/*Daubert* Motion Directed to Anticipated Testimony of Defendant's Expert Witness, Bryan Emond, ECF No. [96] ("Motion"). Defendant filed a response, ECF No. [108], to which Plaintiff did not file a reply. The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

### I.    BACKGROUND

On July 31, 2019, Plaintiff initiated this case against Defendant for personal injuries sustained while onboard Defendant's cruise ship. *See* ECF No. [1]. The Second Amended Complaint alleges that on November 24, 2018, while a passenger aboard the Carnival *Freedom*, Plaintiff "was descending an interior staircase between Decks 4 and 3 when a gap between the carpet and metal nosing on a step caught her shoe causing her to lose her balance, trip on the gap, fall down the stairs and thereby sustain serious injuries, including a fractured right fibula requiring

surgical repair." ECF No. [28] ¶ 11. Based on these allegations, Plaintiff asserts three counts of maritime negligence against Defendant for negligent maintenance (Count I), negligent failure to warn (Count II), and negligent design (Count III).

Plaintiff now seeks to strike the opinions and testimony of Defendant's expert witness, Bryan Emond ("Mr. Emond"), regarding the stairs he inspected in February, 2020, because his opinions and conclusions are irrelevant to the condition of the stairs on which Plaintiff fell a year earlier.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[1]

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7.

To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III.   DISCUSSION

As an initial matter, Plaintiff does not object to Mr. Emond's qualifications as an engineer; rather, Plaintiff appears to be challenging the reliability and helpfulness of Mr. Emond's opinions and conclusions because the stairs he inspected were materially different from the condition of the stairs when Plaintiff fell.[2] Plaintiff asserts, which Defendant does not dispute, that the carpeting on the stairs where Plaintiff fell was replaced in the summer of 2019, after Plaintiff's fall. In addition, while the nosings were the same nosings as before, they were removed during the carpet replacement process and then reinstalled. In response, Defendant argues that Mr. Emond's opinions are based on reliable methodology and relevant industry standards, and that Mr. Emond's testimony will be helpful because he will explain how the conditions of the stairway and the mechanics of Plaintiff's steps and choice of footwear affected her incident.

Notably, Plaintiff does not dispute any of the procedures or standards Mr. Emond employed in forming his opinions. Plaintiff does not specify which portion of Mr. Emond's methodology is

---

[2] Despite the opportunity to do so, Plaintiff did not file a reply addressing Defendant's arguments in response to the Motion.

unreliable, other than to point out that his report acknowledges that the carpeting on the steps was replaced sometime after Plaintiff's incident, to suggest that Mr. Emond's entire testimony is therefore unreliable. The Court disagrees. Indeed, upon review of Mr. Emond's report, the Court finds a sufficient explanation of the methodology used in forming his opinions. Mr. Emond addresses the procedures followed, including the materials he reviewed, which include photographs of the stairs taken shortly after Plaintiff's incident, the scope of his inspection on the *Freedom*, and the applicable rules, industry standards, and guidelines. *See* ECF No. [96-3]. The Court finds that this methodology is sufficient for present purposes.

Plaintiff's challenge to the helpfulness of Mr. Emond's testimony is based upon the same argument that the stairs he inspected are not in the same condition as the stairs upon which Plaintiff's fall occurred. "The helpfulness inquiry is essentially a question of relevance." *Edmonson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 10591833, at *7 (M.D. Fla. Aug. 31, 2017) (citing *Quiet Tech.*, 326 F.2d at 1347). "For testimony to satisfy the third requirement—assisting the trier of fact—the testimony must concern matters that are beyond the understanding of the average lay person." *Edwards*, 580 F. App'x at 823 (quotations and citation omitted). Here, Plaintiff fails to convince the Court that Mr. Emond's testimony is not relevant, simply because Defendant acknowledges that the carpet on the stairs where Plaintiff fell was replaced after her incident and before Mr. Emond inspected the stairs. Defendant argues that the issues raised by Plaintiff are appropriate for cross-examination, rather than justification for striking Mr. Emond as an expert witness. The Court agrees. The Eleventh Circuit has "long held . . . that a delay in viewing or inspecting the place where an accident took place normally goes to weight and not to admissibility." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1284 (11th Cir. 2015). Instead, "[a]ny weaknesses in the factual underpinnings of [the expert's] opinion go to the

weight and credibility of his testimony, not to its admissibility." *Id.* (citation omitted). Thus, if Plaintiff wishes to challenge any suspected weaknesses in Mr. Emond's opinions, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341.

Finally, Plaintiff suggests that even if Mr. Emond's testimony meets the minimum standards required under Rule 702 and *Daubert*, the Court may still exclude the testimony under Federal Rule of Evidence 403. A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013) (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) and *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) ). The movant has the burden to demonstrate that the evidence is inadmissible. *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). Here, Plaintiff fails to explain why Mr. Emond's testimony might confuse or mislead the jury such that it should be excluded under Rule 403. In addition, as the Court has already explained, Plaintiff will be able to freely explore and expose any weaknesses in Mr. Emond's testimony through cross-examination.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [96]**, is **DENIED**.

Case No. 19-cv-23167-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 8, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record