UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23167-BLOOM/Louis

SHERRY JOHNSON,

   Plaintiff,

v.

CARNIVAL CORPORATION,
*a Panamanian Corporation doing business
as* Carnival Cruise Lines,

   Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant" or "Carnival") Motion for Summary Judgment, ECF No. [99] ("Motion"), filed on March 2, 2021. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

   **I.**   **BACKGROUND**

On July 31, 2019, Plaintiff initiated the instant action against Defendant for personal injuries sustained while onboard Defendant's cruise ship, the Carnival *Freedom*. The Second Amended Complaint, ECF No. [28] ("Complaint"), alleges that on November 24, 2018, while descending an interior staircase between Decks 4 and 3, Plaintiff caught her shoe in a gap between the carpet and metal nosing on a step, causing her to lose her balance, trip on the gap, and fall down the stairs. Her fall resulted in serious injuries, including a fractured right fibula requiring surgical repair. ECF No. [28] ¶ 11. Based on these allegations, the Complaint asserts three counts

of maritime negligence against Defendant based upon negligent maintenance (Count I), negligent failure to warn (Count II), and negligent design (Count III). In pertinent part, Plaintiff alleges that Defendant breached its duty of care by failing "to ameliorate, correct or avoid conditions creating a risk of harm for passengers," failing to "warn[] passengers including the Plaintiff adequately of onboard conditions creating a risk of harm to them," and failing to "design[] onboard staircases and the carpeting thereon so as to avoid or ameliorate the carpeting gap described . . . ." *Id*. ¶¶ 14, 20, 26.

Regarding the instant Motion, ECF No. [99],[1] Defendant has filed its corresponding Statement of Material Facts in Support of its Motion, ECF No. [98] ("Defendant's SMF"). Plaintiff filed a Response, ECF No. [114] ("Plaintiff's MSJ Response"), together with its Response to Defendant's SMF, ECF No. [113] ("Plaintiff's SMF Response"). Finally, Defendant filed a Reply in support of its Motion, ECF No. [118] ("Defendant's MSJ Reply"), and a Reply Statement of Material Facts, ECF No. [117] ("Defendant's SMF Reply").

## II.  MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.

On November 24, 2018, Plaintiff and various members of her family were on a cruise aboard the Carnival *Freedom*. ECF No. [98-5] at 2, p. 7.[2] On the evening of her fall, Plaintiff was on her way to the Posh Dining Room for dinner with her family. *Id*. at 18, p. 72. She got lost on

---

[1] Prior to considering the instant Motion, the Court issued an Order, ECF No. [121], denying Plaintiff's Motion to Strike/*Daubert* Motion Directed to Anticipated Testimony of Defendant's Expert Witness Bryan Emond, ECF No. [96].

[2] The "p." references the page number in the relevant transcripts filed on the docket in this case.

the way and had to ask for directions to the restaurant. *Id.*, p. 74. When she finally found the restaurant, she was told that her table was located on the floor below. *Id.* at 20, p. 77. Plaintiff noticed that there were a lot of people waiting to take the elevators down, so she decided to take the stairs down instead. *Id.*

### A. The Stairs

The staircase in question is Staircase 50, between Decks 4 and 3. ECF No. [98-6] at 9, p. 32; 13, pp. 48-49. The Posh Dining Room is located on Decks 4 and 3 in the aft portion of the ship. *Id.* at 6, p. 19. The staircase is carpeted and consists of an upper set of six stairs descending to a carpeted landing that leads to another set of carpeted stairs descending to the lower deck level. *Id.* at 120, 123. Each of the stairs on Staircase 50 is fitted with a metal nosing strip with an inset anti-skid rubber strip. *Id.* at 121-122.

### B. Plaintiff's Fall

After deciding to take the stairs rather than wait for the elevator, Plaintiff walked over to the stairs, grabbed hold of the railing on the left side and began to walk down the stairs. ECF No. [98-5] p. 78. The stairs were carpeted and had a metal strip along the edge. *Id.*, p. 79. At her deposition, Plaintiff testified that she was looking at the steps when she was walking down the stairs and the area was well lit. *Id.*, pp. 79-80. She also saw the metal nosing on the stairs before she fell. *Id.*, p. 80. Plaintiff testified further that she did not remember how many steps she had taken, but her "right foot got caught onto the metal stripping" and her "left foot went forward" and her "right foot was bent all the way back toward the back part of [her] leg and that's when [she] fell going down the steps." *Id.*, p. 78. According to Carnival's accident summary for Plaintiff's incident, Plaintiff "tripped on the antiskid strip of the second to the last step[.]" ECF No. [115-2] at 40, p. 155. Specifically, Plaintiff stated that "[t]he heel of my shoe got caught on the edge of the

3

metal, the – on – between the carpet and the metal nosing. . . . [M]y heel was caught inside the metal nosing." ECF No. [98-5], at 20-21, pp. 80-81. In describing the mechanics of her fall, Plaintiff stated that "all I remember is my left foot going forward and my right foot was caught and then all of a sudden part of me – part of me was going down the steps and another part of me was held on by the steps." *Id*., p. 81. Plaintiff was wearing flat ankle boots. *Id*. Plaintiff fell down the first set of six stairs and ended up on the landing before the next set of steps. *Id*. at 21, p. 84; *see also* ECF No. [98-6] at 120, 123.

After falling, Plaintiff remembers her foot hanging backwards, feeling pain, and "pushing her foot back into place." ECF No. [98-5] at 21, p. 83. She testified that she did not look at that time to see if there was anything wrong with the stairs. *Id*. at 21-22, pp. 84-85. When she fell, there was another female passenger who witnessed her fall and helped her down the steps after she had fallen. *Id*. at 22, p. 85. Plaintiff also testified that there was a Carnival employee cleaning nearby during the time of her fall, and that she told him that she had fallen. *Id*. at 21, pp. 81-82; 22, p. 86.

### C. Maintenance Protocol

Carnival routinely cleans and maintains the subject stairs, and if any discrepancies are noted, they are reported. ECF No. [98-2] at 6. Hotel stewards monitor the area on a continuous basis throughout the day. *Id*. at 8. Housekeeping team members are responsible for cleaning and maintaining the passenger stairs on a daily basis, including the staircase involved in Plaintiff's fall, and they visually inspect the area during the course of routine cleaning. ECF No. [98-7] ¶ 12; ECF No. [98-2] at 8. If any discrepancies are noted, crew members are trained to notify their supervisors and a work order is created. ECF No. [98-7] ¶ 13; ECF No. [98-2] at 8.

### D. Accident Investigation

Plaintiff's sister called Guest Services on November 24, 2018, the day of the fall, and told the Guest Services Agent that Plaintiff had fallen. ECF No. [98-6] at 5, p. 16; *see also* ECF No. [98-5] at 26, pp. 103-04. However, Plaintiff did not report to the medical center until five days after her fall, on November 29, 2018. ECF No. [98-2] at 6. In general, when an accident occurs, a guest is to report to the medical center, and based upon the severity of any injury, the ship's physician determines whether an accident is reportable, which prompts the involvement of ship security and an accident investigation. ECF No. [115-1] at 7, p. 25; 9, p. 31. However, anytime an incident involving an injury occurs, the person should be directed to report to the medical center. ECF No. [115-2] at 11, p. 38. Upon arrival at the medical center, an incident report should be initiated, prompting communication to the chief security and staff captain, at which point chief security and the managing entity of the area where the person was injured would inspect the area to determine root cause, take photographs, and take steps to proactively address any issues. *Id*., p. 39.

On the morning of November 29, 2018, after Plaintiff reported to the medical center, Assistant Chief Security Officer ("ACSO") Maria Cristina Manuel conducted the accident investigation and prepared an accident report, which included taking four (4) photographs of the area where Plaintiff fell. ECF No. [98-2] at 5; ECF No. [98-6] at 15, p. 54. According to Carnival's Litigation Representative, Monica Borcegue, if any discrepancies are noted by housekeeping team members, they are trained to notify their supervisors and a work order is created. ECF No. [98-7] ¶ 13. There were no work orders, work request, or work permits for the subject staircase either before or after Plaintiff's fall for the staircase involved. *Id.* ¶ 14. No hazards or defects on the stairs

were identified before or after Plaintiff's fall, and the stairs were determined to be in good condition without any safety concerns upon inspection. ECF No. [98-2] at 6.

### E. Past Incidents

There were seven (7) prior incidents involving a passenger falling on staircases aboard the *Freedom* in the three years before Plaintiff's fall. *See* ECF No. [98-2] at 9-10. These include three (3) incidents on Staircase 50. *Id*. The four (4) other incidents involved Staircase 250. *Id*. On April 26, 2016, a female passenger reported that, as she descended the stairs from Deck 6 to Deck 5 on Staircase 50, her shoe, specifically a strapped sandal, got stuck on the second step antiskid metal strip, causing her to lose balance and fall forward. *Id*. at 9; *see also* ECF No. [115-3] at 2. On June 13, 2016, a male passenger reported that he tripped on the metal strip of a stair and fell backwards while descending Staircase 250 from Deck 4 to Deck 3. ECF No. [98-2] at 9, *see also* ECF No. [115-3] at 16. On January 16, 2018, another female passenger reported that her left foot got caught on the edge of the third step from the bottom while descending from Deck 9 to Deck 8 on Staircase 50, and she fell forward. ECF No. [98-2] at 10; *see also* ECF No. [115-3] at 6. On August 20, 2018, a minor passenger reported that her shoe caught the edge of the step when she was descending Staircase 250 between Deck 11 and Deck 10, causing her to twist her foot. ECF No. [98-2] at 10; *see also* ECF No. [115-3] at 11.

In addition, there were nine (9) other reported incidents involving similar staircases on sister ships in the Conquest Class in the three years before Plaintiff's fall, at least four (4) of which involved a passenger's foot getting "caught" on the stairs. ECF No. [115-3] at 4, 13-15.

Defendant now moves for summary judgment and argues that Plaintiff has failed to adduce any evidence of negligent maintenance of the subject staircase, negligent failure to warn, and negligent design.

### III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130,

1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*"). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *see also Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

## IV.  DISCUSSION

In the Motion, Defendant argues that summary judgment is warranted because Plaintiff has not adduced that a specific risk existed in this case, Plaintiff fails to establish that Carnival had actual or constructive notice of the problem with an unidentified step, she cannot establish proximate cause,[3] and Plaintiff has failed to produce evidence to support her negligent design claim. The Court considers each argument in turn.

---

[3] Carnival makes two additional arguments -- that Plaintiff's mere speculation as to negligent maintenance cannot defeat summary judgment and that she cannot cure evidentiary deficiencies with a subsequent affidavit. Carnival's first argument fails for the same reasons Carnival is not entitled to summary judgment regarding the existence of a specific risk or notice. In addition, Carnival's second argument fails because Plaintiff did not file a subsequent affidavit, which Carnival appears to acknowledge by not arguing the point further in Defendant's MSJ Reply.

### A. General Maritime Negligence Claims

As the instant action concerns maritime negligence claims, the Court will briefly explain the relevant framework for addressing these claims. "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358

U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797.

> To establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

### 1. Whether a Dangerous Condition That Was Not Open or Obvious Existed

"A dangerous condition is one that is not apparent and obvious to a passenger[.]" *Stewart*, 365 F. Supp. 3d at 1275. "A cruise line does not need to warn passengers or make special arrangements for open-and-obvious risks . . . . In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018).

Defendant argues that Plaintiff has not adduced that a specific risk existed in this case because, while she contends that a gap existed between the carpeting and the stair tread nosings, she herself did not see such a condition, and she did not know what, if anything, was wrong with the nosings. In addition, Defendant argues that Plaintiff testified that the area was well lit and that

she was aware of the nosings on the edges of the stair treads, such that the metal nosings were open and obvious.

Upon review of the record evidence, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that there is a genuine issue of material fact as to whether a dangerous condition existed that was not open or obvious. Namely, Plaintiff testified that the heel of her shoe got caught between the carpet and metal nosing, causing her to fall. *See* ECF No. [98-5] at 20-21, pp. 80-81. And although Carnival makes much of the fact that Plaintiff did not remember which stairs she got caught on, Carnival's own accident summary for Plaintiff's incident indicates that Plaintiff "tripped on the antiskid strip of the second to the last step[.]" ECF No. [115-2] at 40, p. 155. In addition, there is conflicting evidence as to whether the photographs of the staircase taken after Plaintiff's fall depict whether there was a potential hazard related to the metal nosings on the stairs where Plaintiff fell. Upon review, the photographs do not depict any close-up views of how the nosings are affixed to the stairs, and it is undisputed that there were no measurements taken of the stairs or the nosings as part of Carnival's investigation of Plaintiff's fall. Nevertheless, on the one hand, Suzie Vasquez, Carnival's corporate representative, testified that the photographs "conclusively show there was no discrepancy found." ECF No. [98-6] at 17, p. 63. On the other hand, Tim Lorette, who was the occupational safety manager for the *Freedom* at the time of Plaintiff's fall, testified that one cannot tell from the photographs taken after Plaintiff's accident if a trip hazard exists. ECF No. [115-2] at 13, pp. 47-48.[4] Moreover, while Plaintiff testified that she was aware of the metal nosing and that the area was well lit, a reasonable trier of fact could conclude, based upon the facts above, that a space existed between the carpet and the metal nosing in which her shoe could catch, and that such a space would not be apparent or obvious to the

---

[4] Indeed, whether the photographs support a finding in Plaintiff's or Carnival's favor is an issue of fact.

reasonably objective person.

Defendant's reliance on *Taiariol v. MSC Crociere, S.A.*, No. 0:15-cv-61131-KMM, 2016 WL 1428942, at *4 (S.D. Fla. Apr. 12, 2016), to support its contention that a metal nosing on steps is open and obvious is misplaced. Significantly, in *Taiariol*, the plaintiff sustained injuries after slipping on the metal nosing on a step. 2016 WL 1428942, at *1. In granting summary judgment for the cruise line, the Court noted that the metal nosing was brightly illuminated and not obscured or hidden. *Id*., at *4. In addition, there was no contention that there was any defect on the stair or strip that caused the plaintiff's fall – it was the slippery nature of the nosing that caused her fall. *Id*. Here, Plaintiff's claims are premised precisely upon a defect in the stairs – a space large enough between the metal nosing and the stair for the heel of her boot to catch.

As such, there are genuine issues of material fact that remain as to whether a dangerous condition existed and whether it was open or obvious, as to both Plaintiff's claims for negligent failure to warn and negligent maintenance.

## 2. Actual or Constructive Notice

Carnival argues further that it is entitled to summary judgment because Plaintiff cannot establish that Carnival knew or should have known of the allegedly dangerous condition simply because she suffered an accident.

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "To show notice, it is not enough to demonstrate merely that the defendant negligently created or maintained its premises." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1303 (11th Cir. 2020) (citing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358-59 (11th Cir. 1990)). "Rather,

the plaintiff must establish that a cruise line in fact knew or should have known that a particular hazard existed." *Id*.

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.p.A.*, No. 08-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009), *aff'd*, 410 F. App'x 210 (11th Cir. 2010). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id*. (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)). "[E]vidence of similar accidents might be relevant to defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Jones*, 861 F.2d at 661 (quoting *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338 (5th Cir. 1980)). In order to be admissible, "conditions substantially similar to the occurrence in question must have caused the prior accident," and "the prior accident must not have occurred too remote in time." *Id*. at 662-63 (citations omitted). Overall, "[d]etermining the remoteness of evidence is within the trial judge's discretion." *Id*. at 663 (citation omitted).

Here, a reasonable trier of fact could find that the evidence demonstrates that Carnival had at least constructive notice of a dangerous condition on the stairs. First, Plaintiff has provided evidence of prior similar incidents involving falls on Staircase 50 on the *Freedom*, another similar

14

staircase on the *Freedom*, and equivalent staircases on sister ships in the Conquest Class of ships. Although Carnival argues that the prior incidents are not similar enough, the Court disagrees. Notably, Vasquez agreed at her deposition that all of the incidents involving sister class ships deal with similar stairs in that they were guest stairs with carpeting and metal nosing. ECF No. [98-6] at 28, p. 108 ("Q. Okay. And, in fact, all of the incidents that have been identified in this case involving sister class ships also deal with similar stairs in the sense that they are Guest Stairs with carpeting and nosing – metal nosing, correct? A. Yes."). In addition, eight (8) of the past reported incidents involved descriptions of a passenger's shoe getting caught or stuck on the metal strip or the edge of a stair. Moreover, all of the reported incidents occurred within approximately two and one-half years before Plaintiff's fall.

Second, the record reflects that Carnival acknowledged approximately ten months before Plaintiff's fall, that there could be an issue with carpet on the stairs and the nosing not being flush. Specifically, Vincenzo Gesuele, the Staff Captain for the *Freedom* at the time of Plaintiff's fall, testified at his deposition that during an accident investigation meeting to review a passenger's January 16, 2018 incident, in which a female guest's left foot got caught on the edge of a step on Staircase 50 descending from Deck 9 to Deck 8, he indicated that "Staff Captain is especially concerned with housekeeping manager to check the carpet of area of accident if it needs to be replaced with a new carpet." ECF No. [115-1] at 28, p. 106. In addition, Gesuele testified that he asked the housekeeping manager to check the "[c]ondition of the carpet, condition of nosing." *Id*. at 29, p. 112. Furthermore, both Gesuele and Lorette testified that the minutes of a Carnival Health, Environmental, Security, and Safety ("HESS") Steering Committee meeting held on January 21, 2018 indicate that "[r]egarding the trip and fall reportable accidents we experience during the cruises, there's little we can do. It may have depended upon the guest stairstep nosing not being

15

flush with the surface of the step. This has always been a non-frequent but repeated issue in our guest stairs." *Id*. at 30, pp. 114-15; ECF No. [115-2] at 17, p. 62. The minutes of the meeting reflect further that Lorette was asked to take a look at the issue, and "to take a look at the history of this type of incident in stairs number 250, 100 and 50 to see how many of this type we had and to see if we should change the stairs nosing." ECF No. [115-2] at 17, p. 62.

Third, the record evidence reflects that Carnival's housekeeping staff is tasked with monitoring the staircases for any discrepancies. "Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) (citations omitted). Specifically, the housekeeping staff is trained to note any discrepancies in the treads or carpet during the course of cleaning the stairs, so that a work order can be issued to generate a repair job. ECF No. [98-6] at 24, p. 93; *see also* ECF No. [98-7] ¶ 13. According to Vasquez, a "discrepancy would be if the nosing was loose in some way, if the carpet was ripped in some way, if there was a wrinkle, if there was a gap." ECF No. [98-6] at 32, p. 123.

This evidence is sufficient to create a genuine issue of material fact as to whether Carnival was on notice of a potentially hazardous condition involving the metal nosings, causing passengers' shoes to get caught or stuck.

### B. Proximate Cause

Carnival argues next that it is entitled to summary judgment on Plaintiff's claims because Plaintiff cannot establish that the allegedly dangerous condition proximately caused her injuries without additional evidence or expert testimony. In response, Plaintiff contends that her treating physicians may testify to their clinical treatment of Plaintiff's ankle fracture and clinical observations since they made such observations during the course of their treatment of Plaintiff.

"Expert testimony is required to establish medical causation for conditions not readily observable or susceptible to evaluation by lay persons." *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1285 (S.D. Fla. 2019) (citing *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017) ("When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required.")). "Expert testimony is also required to distinguish between ailments that a plaintiff had before an accident and those she experienced after—and due to—the incident." *Id*. (citing *Rivera*, 711 F. App'x at 954-55).

Here, Plaintiff alleges that she sustained damages "including a fractured right fibula requiring surgical repair, [] pain and suffering therefrom, sustained mental anguish, sustained scarring, disfigurement, disability, aggravation or activation of preexisting injuries, lost wages in the past, a loss of her future earning capacity, and the inability to lead a normal life." ECF No. [28] ¶ 12. Apart from her ankle fracture, which Carnival does not dispute Plaintiff sustained as a result of her fall on the *Freedom*, Plaintiff's injuries are not readily observable, and expert testimony is required. *See Rivera*, 711 F. App'x at 955 ("Further, due to the nature of the injuries that she alleges—including, for example, back pain, depression, anxiety, and vision issues—expert testimony is simply required in order to even understand the nature and extent of the injuries.").

In pertinent part, Plaintiff testified that she cannot stand for too long, cannot walk up and down stairs too often, and has developed back pain. ECF No. [98-5] at 33, p. 132. She also testified that she cannot drive for longer than an hour and that she did not have that limitation before the cruise. *Id*. at 34, p. 134. She testified further that she uses a cane in her apartment because when she stands on her right foot, she can barely walk. *Id*. at 35, p. 137. While Plaintiff is correct that her treating physicians may testify as lay witnesses, because they were not disclosed as expert

witnesses, they will be precluded from offering opinions about the cause of her not-readily-observable injuries. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1316 n.23 (11th Cir. 2014) ("A treating physician providing lay testimony can testify narrowly, limited to personal knowledge resulting from providing medical care, involving consultation, examination, or treatment of a patient plaintiff." (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (distinguishing between an oral surgeon's testimony that a patient had a fractured jaw as opposed to giving a hypothesis as to the cause)).[5]

In addition, the record reflects that Plaintiff has several pre-existing conditions. At her deposition, Plaintiff testified that before the cruise she had bone spurs on the top of her feet, fibromyalgia that affects her feet, and arthritis in each of her joints. ECF No. [98-5] at 4, p. 16; 31-32, pp. 124-25; 34, p. 135. Moreover, Plaintiff's medical records indicate that she has plantar fasciitis in both of her feet, which was diagnosed in 2007, and that she suffered from PTSD, anxiety, and depression before the cruise. ECF No. [101-1] at 3, 5. Thus, expert testimony is further required to distinguish between the ailments Plaintiff experienced before her fall, and those she has experienced after. *See Mann*, 385 F. Supp. at 1285.

Given Plaintiff's pre-existing conditions and the nature of the alleged injuries as a result of her fall—including back pain, the inability to ascend or descend stairs too often, stand or drive for too long, and the need to use a cane in her apartment—conditions that are not readily observable, expert testimony is required to establish proximate cause. Because Plaintiff has not provided any record evidence as to her not-readily-observable injuries, Carnival is entitled to summary judgment as to those injuries.

---

[5] In *Henderson*, the Court noted that the treating physician did not need to determine how the individual was injured in order to treat him, in concluding that "[h]er diagnosis of the injury itself, that Grant's jaw was fractured, would be permissible lay testimony, but her statement about the cause of the injury was, as she admitted, a 'hypothesis.'" 409 F.3d at 1300.

Plaintiff may of course testify regarding her ankle fracture, which Carnival has not argued is not readily observable. Therefore, Carnival is not entitled to summary judgment for Plaintiff's failure to establish proximate cause as to that injury.

### C. Plaintiff's Negligent Design Claim

Carnival argues that Plaintiff's claim for negligent design cannot survive summary judgment because she has not established that Carnival had any say or participation in the design decisions. Plaintiff did not respond to this argument.

Liability based on negligent design would require that Carnival "actually created, participated in, or approved the alleged negligent design" of the staircase. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012). The undisputed evidence in this case is that a third-party architect selected the architectural materials for the outfitting of the subject stairs, the geometry and structure of the stairs were designed by the shipyard, Fincantieri, and Carnival did not have any actual participation in the design of the staircase involved in this case. ECF No. [98-7] ¶¶4-5. Plaintiff has pointed to no evidence in the record that would tend to prove or indicate otherwise. As such, there is no genuine issue of material fact with respect to Plaintiff's negligent design claim and Carnival is entitled to judgment on Count III. *See Rodgers v. Costa Crociere, S.P.A.*, 410 F. App'x 210, 212 (11th Cir. 2010) (affirming grant of summary judgment on negligent design theory of liability, "where there was no evidence whatsoever that Costa actually designed the stairs or hand rails").

### V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Carnival's Motion, **ECF No. [99]**, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 9, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record